IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENTECOSTAL TEMPLE CHURCH )<br>          Plaintiff, )<br>)<br>    v. )<br>)<br>STREAMING FAITH, LLC and )<br>MULTICAST MEDIA NETWORKS, )<br>LLC and MULTICAST MEDIA )<br>TECHNOLOGIES, INC. )<br>          Defendant. ) | Civil Action No. 08-554<br>Chief Judge Donetta W. Ambrose<br>Magistrate Judge Lisa Pupo Lenihan |

**OPINION AND ORDER**

**I. SUMMATION**

Defendant's Motion to Dismiss for Improper Venue or to Transfer will be granted in the form of transfer of this action to the United States District Court of Georgia, under 28 U.S.C. § 1404(a).[1]

---

1. For reasons discussed *infra*, the Court disagrees with Defendants' designation of the question as one of "improper venue", but agrees with its conclusion that §1404(a) is the applicable transfer provision. See, *e.g.*, Feldman v. Google, Inc., 513 F.Supp.2d 229 (E.D. Pa. 2007) (concluding venue proper, but transfer warranted under § 1404(a) owing to enforceable, reasonable forum selection clause).

## II. STATEMENT OF FACTS

This case is largely a contractual action filed in State Court by Plaintiff, Pentecostal Temple Church ("Pentecostal") against Defendants, a Delaware corporation and internet technology service provider, Multicast Media Technologies, Inc. ("MMT"), and its two wholly-owned limited liability corporations. All three Defendants have their principle places of business in Georgia. The action was removed by the Defendants to this Court on the basis of diversity jurisdiction.

At issue is a contract, executed by the parties as a November 2, 2005 Purchase Order, for design and implementation of an internet broadcasting system for Pentecostal's Sunday services (a) for purposes of increasing Plaintiff's public exposure and congregation/listeners, and (b) with an expectation on Plaintiff's part, allegedly based on Defendants' representations, that the broadcasting costs would be offset by income from internet viewer donations and advertisers. Plaintiff further asserts that Defendant solicited it by telephone in Pennsylvania, had negotiations and exchanges of information over the course of several months by telephone and e-mail communications into Pennsylvania, shipped equipment to Pennsylvania, and sent a technician to Pennsylvania to set up the internet technology system for broadcast of its services from Pennsylvania.

The Purchase Order signed by the parties, after several months of communication and several revisions, is a two-page document with a General Terms and Conditions section reading:

> TERMS AND CONDITIONS: the terms of this Purchase Order will begin on the Effective Date . . . . This Purchase Order is subject to Streaming Faith' [*sic*] general terms and conditions of service, which are hereby incorporated into this Purchase Order by this reference and can be viewed at 'streamingfaith.com/gtos.pdf'.

In turn, the ten-page statement of General Terms and Conditions of Service available on Defendants' website includes, at page 8, the following paragraph:

> LEGAL: Streaming Faith's provisions of services and products to you [plaintiff] and each Purchase Order shall be governed by the laws of the State of Georgia, excluding choice of law principles, and subject to the jurisdiction of courts located only within the state of Georgia.

Pentecostal broadcast its services from November, 2005 through July, 2007 and paid Defendants in excess of $142,000;[2] it thereafter ceased broadcast and payments to Defendants.[3] Pentecostal filed its State Court action in March, 2008, and complains that there were continuing "extreme technical difficulties" with the service, and that it was misled by Defendants; its claims include fraud in the inducement (owing, *e.g.*, to misrepresentations regarding offsetting income), unconscionable contract/contract of adhesion, and contractual breach. Defendants assert, in the pending Motion, that they are subject only to Georgia jurisdiction under the forum selection clause incorporated by express reference in the Purchase Order, and that such provision is enforceable unless Plaintiff demonstrates that enforcement would be unreasonable or unjust.

---

2. These payments encompassed an initial network set-up fee and monthly service and management fees thereafter.

3. Defendants assert entitlement to over $54,000 in monies due under the contract.

As set forth below, this Court concludes that it has jurisdiction over the Defendants and would otherwise be a proper venue for this action, but that the contractual forum selection clause is valid and enforceable and that, under §1404(a), the action should therefore be transferred to the District Court of Georgia.

### III. Motions to Dismiss or Transfer

The Court considering a motion to dismiss "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). In reviewing a motion to transfer, where transfer would be made from a proper venue, 28 U.S.C. § 1404(a) applies and the factors examined by the Court include convenience to the parties and witnesses, and the interests of justice. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Generally, the party seeking to transfer the case has the burden of establishing the need for transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); id. at 875 (holding that, once court has determined that venue is proper, it must apply a balancing test to determine whether case should be transferred under § 1404(a)). A contractual forum selection clause is generally enforced unless the plaintiff establishes that it was fraudulently obtained, contrary to strong public policy, or "unreasonable", see M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 Fed.Appx. 844, 847 (3d Cir. 2003). In exceptional cases, the Court may determine that a plaintiff has established that the contractual provision is outweighed by other applicable (Jumara) considerations.

**IV. Statutory Provisions for Transfer**

The language of 28 U.S.C. § 1404(a), which governs cases in which the forum court has proper venue, provides simply that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In comparison, 28 U.S.C. § 1406(a), authorizing transfer or dismissal, is expressly applicable when venue is improper.[4]

**V. Analysis**

In addressing Defendants' Motion, the Court will consider whether §1404(a) or § 1406 applies; whether the forum selection clause is enforceable and reasonable; the weight to be accorded; and, as warranted, other public and private factors applicable under §1404(a). See Feldman v. Google, Inc., 513 F.Supp.2d 229 (E.D. Pa. 2007) (addressing same considerations as to forum selection clause in internet agreement and granting transfer).

**A**. **Threshold Determination of Proper Venue**

The Third Circuit has held that a court need *not* reach questions of jurisdiction prior to transfer of a case under 28 U.S.C. §1404(a) to another District Court. See Berkowitz, 328 F.2d at 361 (concluding that district court has power to transfer under either 1404 or 1406 "whether the court in which [the case] was filed ha[s] personal jurisdiction or not") (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)).

---

4. The Third Circuit has suggested that § 1406(a) is not only an appropriate basis for transfer in the event of improper venue, but that - like § 1404(a) - it may also be used where venue is *proper*. See Carteret Savings Bank v. Shushan, 919 F.2d 225, 231 & n. 11 (3d Cir. 1990) (discussing previously "inconsistent conclusions" amongst district courts "on the question of whether § 1406(a) authorizes a transfer when venue is proper"). If venue is proper, however, transfer under § 1406(a) requires the plaintiff's consent. Id.

5

For purposes of this case, however, a reading of the language of the statutory provisions regarding transfer suggests that - frequent indistinctness in their application notwithstanding - the applicability of one or the other, *i.e.*, § 1404(a) or § 1406(a), was intended to turn on proper venue. And the question of venue may rely on the establishment of personal jurisdiction through minimum contacts or a "substantial events" analysis addressed largely by consideration of the same allegations. See 28 U.S.C. § 1391 (providing that venue in a diversity action may arise from (a) defendant's residence in the forum state; (b) the occurrence of a "substantial part of the events or omissions giving rise to the claim", or the situs of a substantial part of the property at issue, in the forum state; or (c) defendant's proper subjection to personal jurisdiction in the forum state "if there is no district in which the action may otherwise be brought"). Plaintiff has - in light of Defendants' deliberate solicitation of its business in Pennsylvania, contract-negotiation contacts within Pennsylvania, delivery of equipment/materials to Pennsylvania, and provision of services in Pennsylvania - made a *prima facie* showing that (a) Defendants are properly subject to jurisdiction under the law of the state where this Court sits, *i.e.*, Pennsylvania; and that (b) a substantial part of the events giving rise to the action occurred here and this Court therefore has proper venue. Accordingly, the transfer analysis is governed by the statutory provisions of 28 U.S.C. § 1404(a). See Feldman, 513 F.Supp.2d at 244-245 (considering applicablity of §§ 1404(a) and 1406, and concluding that former applies where Defendant transacted business in Pennsylvania and was subject to personal jurisdiction).

6

## B. Transfer Analysis

Plaintiff is entirely correct in observing that in considering a transfer under §1404(a), in accordance with the express terms of the statute, the Court must generally evaluate the convenience of the parties, the convenience of the witnesses and the interests of justice. See 1404(a). And although "a plaintiff's choice of venue should not be lightly disturbed", the Court must also consider a variety of other private and public factors. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The private interests include the parties' preferences, "the convenience of the parties as indicated by their relative physical and financial condition", the unavailability of witnesses for trial, and the situs of books and records. Id. (citing 15 Wright, Miller & Cooper § 3848-3853). Applicable public factors include the enforceability of the judgment; factors that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; "the local interest in deciding local controversies at home"; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases. Jumara, 55 F.3d at 879 (citing Wright, Miller & Cooper § 3854).[5]

A valid contractual forum selection clause is, as an indication of the parties' preferences, a "significant factor" and a substantial consideration that "figures centrally" in the Court's

---

5. See also id. (noting that the courts should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum") (citing Wright, Miller & Cooper, § 3847); Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (noting that district courts have broad discretion "to adjudicate motions for transfer accord to an 'individualized, case-by-case consideration of convenience and fairness'") (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

assessment of the appropriateness of transfer.  See Stewart Org., Inc. v. Rocoh Corp., 487 U.S. 22, 29 (1988); Feldman, 513 F.Supp.2d at 245 (citing Stewart); Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1994) (noting that decision to transfer under § 1404(a) involves multi-factor test in which forum selection is one facet); id. (further stating that deference to plaintiff's choice of forum in filing suit is inappropriate where plaintiff has already freely contractually chosen an appropriate venue).  Cf. Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir. 1983) (holding that forum clause is presumptively valid and enforceable unless the party objecting establishes that (1) it results from fraud or overreaching; (2) enforcement would violate strong public policy of the forum; or (3) enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable); Jumara, 55 F.3d at 879-80 (explaining that plaintiff bears burden of demonstrating why it should not be bound by contractual choice of forum) (quoting M/S Bremen, *supra*).

As noted above, in the Purchase Order at issue, the parties designated a choice of forum, and that forum was Georgia, the Defendants' principal place of business.[6] Plaintiff's arguments against enforcement of this provision are two-fold; *i.e.*, that the clause is invalid/unenforceable and/or that it is insufficient, under the Jumara factors, to warrant transfer.  We address these arguments in turn:

---

6. The Court notes that, Plaintiff's suggestions to the contrary notwithstanding, the forum selection clause is plainly mandatory.  See generally, Wall Street Aurey Folf, LLC v. Aubrey, 189 Fed. Appx. 82, 85 (3d Cir. 2006)

**1. Clause invalid/unenforceable**

First, Plaintiff asserts that the forum selection clause should be disregarded as invalid because (1) Plaintiff was misled or fraudulently induced to enter into the contract; (2) the forum selection clause provisions were not set forth in the Purchase Order, but only incorporated by reference to an internet website document; and/or (3) the contract was unconscionable and/or one of adhesion.

**a. Fraud**

As Defendants duly note, Plaintiff's allegations of general fraud and/or misrepresentations with respect to the Defendants' provision of internet broadcasting equipment and services and purported benefits and net expenses thereof, while well-pled and troubling, and certainly significant to the litigation of this case, do not, without more, invalidate the forum selection clause. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) (upholding enforcement of forum selection clause despite allegations of fraud, noting that clause is not enforceable "if the *inclusion of that clause in the contract* was the product of fraud or coercion").[7] Nor do plaintiff's allegations, detailed by Affidavit, that the forum selection clause provisions were altered in various drafts prepared over the months of the parties' pre-contract communications, invalidate those provisions as fraudulently included in the November, 2005

---

7. See also MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844, 847 (3d Cir. 2003) (concluding that "proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause itself'") (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403 (1967)); Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974) (upholding forum selection clause despite plaintiff's allegations of inducement to contract by fraudulent representations during negotiations); Picken v. Minuteman Press Int'l, 854 F.Supp. 909, 911 (N.D. Ga. 1993); Carters Royal Dispos-All v. Caterpiller Fin Servs., 271 Ga. App. 159 (Ga. Ct. App. 2004).

Purchase Order signed by the parties. To the contrary, the drafts and other communications indicate that the parties were considering, clarifying, and discussing the terms of their agreement over the course of several months. Plaintiff had the opportunity to read and understand the Purchase Order it signed, as well as the terms incorporated therein by express and clear provision.

**b. Incorporated by Reference to Internet Terms**

Plaintiff's assertions that the clause should be disregarded because the Purchase Order incorporated terms and conditions only available on the Defendants' website, and not provided in hard-copy to the Plaintiff, must also fail. The Third Circuit has recently held that a customer on notice of contract terms available on the internet website is bound by those terms. Schwartz v. Comcast Corp., 2007 WL 4212693 (3d. Cir. Nov. 30, 2007).[8] Cf. Feldman v. Google, Inc., 513 F.Supp.2d 229, 236 (E.D. Pa. 2007) (noting, in considering enforceablity of terms available for review on internet site, that under "traditional principles of contract law", focus is "whether the plaintiffs had reasonable notice of and manifested assent to the . . . agreement"); id. at 237 (distinguishing Specht v. Netscape Comms. Corp., 306 F.3d 17 (2d Cir. 2002), in which terms were "submerged" in multiple website layers and no reasonable notice was provided).[9] Again, Plaintiff could have read the provisions, and failure to do so does not excuse compliance with their terms. See, *e.g.*, Feldman, *supra*. See also Capricorn Power Co. v. Siemens Westinghouse

---

8. See also id. (observing that customer who accepted monthly-services-for-fee he knew were tendered on basis of agreement was bound, despite never receiving a copy of terms available on website); id. (citing Restatement (Second) of Contracts § 23 (1981) (offeree may manifest asset and be bound by terms, where he should have been aware of terms, even if he did not read them).

9. Compare also Pollstar v. Gigmania Ltd., 170 F.Supp.2d 974, 981 (E.D. Ca. 2000) (finding no reasonable notice where hyperlink to terms appeared in small grey print on grey background).

Power Corp., 324 F.Supp.2d 731, 749 (W.D. Pa. 2004) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties . . . may incorporate contractual terms by reference to a separate (unsigned document)".)

### c. Contract of Adhesion/Unconscionable

Similarly, Plaintiff has proffered no basis for a finding that the Purchase Order, or its provisions, constituted a contract of adhesion or was unconscionable. As our sister Court in the Eastern District has observed:

> Unconscionability has procedural and substantive components. The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts. The substantive component is satisfied by overly harsh or one-sided results that 'shock the conscience.'

Feldman, 513 F.Supp.2d at 239 (citations omitted). Here, the interval of several months of communications and revisions prior to execution of the Purchase Order indicates opportunity to negotiate and bargaining regarding the parties' agreement. Compare, *e.g.*, Ostroff v. Alterra Healthcare Corp., 433 F.Supp.2d 538, 542 (E.D. Pa. 2006 (unconscionability is the "absence of meaningful choice on the part of one" party).[10] The internet provisions clearly incorporated by reference, readily available on the identified internet site, and plainly and clearly set forth therein, do not constitute "hidden terms". And the provisions themselves, while certainly favorable to the Defendants, are not so unduly one-sided as to shock the conscience. The Court

---

10. Plaintiff has not alleged high-pressure tactics or ultimatums or the absence of an alternative provider. It is an entity which had notice of the terms, was clearly taking the time to inform itself prior to decisionmaking, was capable of understanding the language at issue, and was able to obtain counsel in its discretion. It was free to reject the terms of the Purchase Order; it assented to them.

finds no evidence of coercion, overreaching, or bad faith by the Defendants. Cf. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991) (holding that non-negotiated forum selection clause in form contract may be enforceable) (cited in Feldman, *supra*); id. (comparing circumstances where plaintiff lacked notice of clause and thus option of rejecting it, or where clause was included to discourage customers from pursuing legitimate claims rather than for legitimate business purpose of restricting litigation to venue of principal place of business rather than all fifty states).[11] Plaintiff fails to meet its burden of persuasion or to submit analogous case law in support of its position.[12]

### 2. **Application of Jumara Factors**

Second, Plaintiff asserts that consideration of the Jumara factors weighs in favor of excusing it from its contractual undertaking to litigate this contractual dispute in Georgia. The Court does not believe Plaintiff begins to meet its heavy burden. See M/S Bremen, 407 U.S. at 19 (holding that plaintiff seeking avoidance of contractual forum selection clause must show not only that the balance of convenience is strongly in favor of [the different forum] but also that [resolution in the selected forum] will be so manifestly and gravely inconvenient . . . that it will be effectively deprived of a meaningful day in court"); cf. Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22 (1988) (Kennedy, J., concurring) (opining that "a valid forum selection clause [should

---

11. Cf. Feldman, 513 F.Supp.2d at 242 (observing that forum selection clauses serve valid purposes for internet service providers whose users are national, or even international).

12. The Court also notes that the forum selection clause at issue violates no public policy of this forum, for reasons discussed *supra*.

be] given controlling weight in all but the most exceptional case"). Plaintiff's conclusory statements, absent support establishing grave inconvenience and effective depravation, are insufficient. See generally Cent. Contracting Co. v. Maryland Casualty Co.,367 F.2d 341, 344 (3d Cir. 1966) ("Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action, then plaintiff should be bound by his agreement."). Rather, neither the private factors (the parties' forum preferences, where the claim arose, the parties' convenience, the convenience of witness to the extent they may be unavailable for trial in a fora, and the location of books and records) nor the public factors (enforcability of judgment, expedition and expense of trial, administrative difficulties, local interest in local controversies, public policies, or familiarity of trial judges with applicable law) weigh in favor of releasing Plaintiff from its contractual agreement.[13]

## III. ORDER

For the reasons set forth above, the Court hereby Orders that the Defendant's Motion to Dismiss or Transfer be granted as to a transfer of this action, under 28 U.S.C. § 1404(a), to the

---

13. More particularly, Defendants elected and Plaintiff contractually agreed to venue in Georgia, the claims entail conduct of Defendants doing business in/operating from Georgia, some witnesses and records will be located in Georgia and those that are not can be made available there, this Court has no special local interest, no public policies are adversely affected, the Georgia trial judge will be familiar with the applicable law, and this Court is aware of no administrative considerations.

United States District Court for Georgia, owing to the parties' contractual agreement to an enforceable forum selection clause, which agreement is not overridden by any other applicable considerations.[14]

This case will be transferred to the District of Georgia on September 29, 2008 (thirteen days from the date of this Opinion and Order) unless Plaintiff/Petitioner files an appeal to the District Court on or before that date.

                                              LISA PUPO LENIHAN
                                              United States Magistrate Judge

Dated: September 16, 2008

---

14. Cf. Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001) (directing that while dismissal is permissible means of enforcing forum selection clause, as a general matter, when venue is proper but parties have agreed upon not-unreasonable forum selection clause directing another federal venue, transfer is preferred).